



FILED

Jul 31 2026, 9:14 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

David Edmonson,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

July 31, 2026

Court of Appeals Case No.
25A-CR-2693

Appeal from the Marion Superior Court

The Honorable Amy M. Jones, Judge
The Honorable David M. Hooper, Magistrate

Trial Court Cause No.
49D34-2407-F6-20398

---

**Opinion by Judge Foley**
Chief Judge Tavitas and Judge Weissmann concur.

**Foley, Judge.**

[1] Following a bench trial, David Edmonson ("Edmonson") was convicted of Class A misdemeanor cruelty to an animal.[1] Edmonson appeals, challenging the sufficiency of the evidence supporting his conviction. We affirm.

## Facts and Procedural History

[2] On July 10, 2024, Edmonson drove to an animal control facility in Indianapolis with his fourteen-year-old dog, Snuggles, in his trunk. Edmonson completed a form to surrender Snuggles, who was placed on a stretcher. Cameron Nelson, an Indianapolis Animal Control Officer ("ACO Nelson"), observed that Snuggles was covered in sores and did not appear to be breathing. ACO Nelson administered an intracardiac injection, which verified that Snuggles was still alive. There were maggots on Snuggles, with open sores on his hind legs and rectal area. There was also tape around his snout. ACO Nelson determined that Snuggles scored a three out of nine on the Nestle Purina Body Conditioning Scale, where a healthy dog is a five. Snuggles was euthanized.

[3] Suspecting that Snuggles had been neglected, ACO Nelson took photographs of the dog and prepared a report, which was investigated by Sergeant Jonathan Koers of the Indianapolis Metropolitan Police Department ("Sergeant Koers"). After reviewing the photographs—as well as video surveillance showing

---

[1] Ind. Code § 35-46-3-7(a) (2014).

Snuggles being retrieved from Edmonson's trunk—Sergeant Koers believed that criminal charges were appropriate.

[4] On July 19, 2024, the State charged Edmonson with two offenses: (1) Count I, Level 6 felony torturing or mutilating a vertebrate animal; and (2) Count II, Class A misdemeanor cruelty to an animal. The matter progressed to a bench trial, which was held on August 18, 2025. The State presented testimony from ACO Nelson and Sergeant Koers, and the photographs of Snuggles were admitted into evidence. ACO Nelson explained that the sores on Snuggles were consistent with neglect, stating: "With open sores like this, it's showing that the dog is what we call being neglected because the dog could possibly be sitting in the area too long." Tr. Vol. 2 p. 11. He added: "[The dog] could be sitting in urine. It could be any chemical, but it would be hard to determine that without being tested, but that's typically how that comes about." *Id.*

[5] After the State rested, Edmonson moved to dismiss the charges under Trial Rule 41(B), which the trial court granted as to Count I only. Edmonson then presented testimony from his friend, David Reed ("Reed"), and subsequently testified on his own behalf. Edmonson recounted that he had been caring for Snuggles for about six years. Snuggles weighed as much as 120 pounds.

[6] As of early 2024, Edmonson and Snuggles lived in a motel, where Edmonson paid an extra $60.00 per week in rent for having the dog. Edmonson said he worked third shift and left Snuggles in the motel room with food and water when he was away. Snuggles would urinate and defecate on himself, and

Edmonson would clean up after the dog when he returned to the motel. He attributed the maggots to flies in the motel room. As for the tape around Snuggles's snout, Edmonson said he used clear tape, loosely wrapped, because he could not lift the dog without it biting him and he could not afford a muzzle. Edmonson said that when surrendering Snuggles, he placed the dog in the trunk, rather than the backseat, because he could "barely lift him." *Id.* at 37.

[7] There was inconsistent testimony about when Snuggles's condition deteriorated to the point that the dog was immobile and urinating and defecating on himself. On direct examination, Edmonson testified that T.J.—a friend who had previously cared for Snuggles—visited the motel around March or April 2024, at which point the two men had to lift the dog together because Snuggles could not rise on his own. On cross-examination, Edmonson testified that the dog had only become unable to walk about a week before the surrender, adding: "Before I dropped the dog off, the dog was pretty healthy." *Id.* at 35. Pressed further, Edmonson contradicted himself, stating: "No. The dog never was healthy, for three or four months, the dog was slowing way down." *Id.* at 36.

[8] As to his efforts to secure help, Edmonson testified that he began making calls to the Humane Society and to 2-1-1 in late June or early July, about two weeks before surrendering Snuggles to animal control. Edmonson said he placed six or seven calls before reaching a representative, who told him to bring the dog in the following day, which he did. Edmonson said he first noticed maggots on Snuggles about four or five days before surrendering the dog on July 10, 2024.

Reed testified that he spent time with Edmonson and Snuggles around June or July of 2024, at which point Snuggles's condition was "[h]orrible." *Id.* at 24. He described the dog as unable to go outside, noting that Snuggles would "lay in one place" and Edmonson "would have to get a towel and wipe up the mess." *Id.* Reed testified that he and Edmonson placed about twelve calls to animal services and veterinarians over what he described as "[d]ays," noting that Snuggles "need[ed] a veterinarian very badly due to [his] condition." *Id.* at 26. Reed said he and Edmonson learned that "[t]hey had to charge money to put [the dog] down" and they did not have the money. *Id.* at 25. On cross-examination, Reed testified that the last time he saw Snuggles was in early June 2024, "at least 30 days" before Edmonson surrendered the dog. *Id.* at 27.

The trial court found Edmonson guilty of Class A misdemeanor cruelty to an animal and imposed a 365-day suspended sentence. Edmonson now appeals.

## Discussion and Decision

Edmonson argues that the State failed to present sufficient evidence to support his conviction for Class A misdemeanor cruelty to an animal. In reviewing a sufficiency challenge, we neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the fact-finder. *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). We consider only the evidence most favorable to the judgment and all reasonable inferences drawn therefrom. *Konkle v. State*, 253 N.E.3d 1068, 1090 (Ind. 2025). A conviction is supported by sufficient evidence if there is substantial evidence of probative

value supporting each element of the offense such that a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.*

[12] Indiana Code section 35-46-3-7(a) provides that a person who has a vertebrate animal in custody and who "recklessly . . . neglects the animal" commits cruelty to an animal, a Class A misdemeanor. In this context, "neglect" includes "failing to: (i) provide reasonable care for; or (ii) seek veterinary care for; an injury or illness to a dog or cat that seriously endangers the life or health of the dog or cat . . . ." Ind. Code § 35-46-3-0.5(6)(D) (2023). A person acts "recklessly" when he engages in conduct "in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35-41-2-2(c).

[13] Edmonson first contends that the State failed to prove that Snuggles suffered from an injury or illness that seriously endangered the dog's life or health. He points out that Snuggles was "fourteen years old and immobile." Appellant's Br. p. 10. Edmonson contrasts the circumstances with those in *Deloney v. State*, where this court identified sufficient evidence supporting an animal cruelty conviction; there, a veterinarian assigned a dog a zero on the body condition scale, estimating that the dog had received only water for three to six months. No. 24A-CR-1020, 2024 WL 5200132, *1 (Ind. Ct. App. Dec. 23, 2024) (mem.). Edmonson claims the evidence was insufficient because Snuggles showed no signs of malnourishment and received a three-out-of-nine body condition score, where a score of five is associated with a healthy dog.

[14]     *Deloney* did not establish a threshold for neglect. Here, Snuggles arrived at animal control appearing to be dead; an injection confirmed he was still alive. He had tape wrapped around his snout, visible maggots, open sores on multiple parts of his body consistent with lying in urine, and he was euthanized shortly after arrival. The trial court could reasonably infer from those conditions that Snuggles suffered from injuries that seriously endangered his health.

[15]     Edmonson next argues that the evidence establishes, at most, a lack of attention or an error in judgment rather than the type of conscious disregard required to establish reckless conduct. He directs us to evidence that he made calls about Snuggles's health and promptly surrendered Snuggles once he was able to reach someone. But there was contradictory evidence about the timeline involved. Edmonson's own testimony established that Snuggles could not stand without assistance as early as March or April 2024. And Reed—who last saw Snuggles approximately thirty days before the surrender—described the dog's condition as "[h]orrible." Tr. Vol. 2 p. 24. He said Snuggles would "lay in one place" and Edmonson "would have to get a towel and wipe up the mess." *Id.* At that time, Reed felt that Snuggles "need[ed] a veterinarian very badly due to [his] condition." *Id.* at 26. Moreover, Edmonson claimed that he did not begin seeking help for Snuggles until about two weeks before the surrender.

[16]     The fact-finder could reasonably infer that for at least two weeks after Reed's visit, Edmonson allowed Snuggles to lie immobile in a fly-infested motel room, soiling himself, while the dog's condition worsened to the point of open sores and maggots. The fact-finder could reasonably conclude that keeping Snuggles

in those conditions for that duration—rather than surrendering the dog sooner—amounted to a plain, conscious, and unjustifiable disregard of the resulting harm and a substantial deviation from the care a reasonable pet owner would provide. Edmonson notes that "there is a paucity of published authority on reckless neglect of an animal," Appellant's Br. p. 11, and he directs us to two reckless vehicular homicide cases—*Singh v. State*, 203 N.E.3d 1116, 1121–22 (Ind. Ct. App. 2023), and *Whitaker v. State*, 778 N.E.2d 423, 426 (Ind. Ct. App. 2002)—for the proposition that inadvertence or error of judgment does not support a recklessness finding. These cases do not persuade us the State failed to establish recklessness. *Singh* and *Whitaker* involved a recklessness standard for discrete driving conduct. However, this case does not involve evidence of inattention at a particular moment, but instead, evidence of ongoing neglect.

[17] Edmonson separately argues that his financial inability to afford private veterinary care should not be treated as evidence of recklessness. He refers to *Mueller v. State*, 837 N.E.2d 198, 204–05 (Ind. Ct. App. 2005), which addressed access to diversion programs and has no bearing on whether financial inability negates the recklessness element of this substantive criminal offense. In any case, we need not resolve whether financial inability bears on the recklessness inquiry as a general matter, because on this record it does not account for the neglect. Surrendering Snuggles—the response that ultimately ended the dog's suffering—cost Edmonson nothing. He had that option throughout the months the dog's condition worsened and exercised it only after Snuggles developed open sores across his body with maggots. The issue is not that Edmonson

failed to pay for veterinary treatment. It is that, for a prolonged period of time, he kept Snuggles in deplorable, injurious conditions when a free and humane alternative was available. The trial court was entitled to find recklessness on that basis.

[18] We conclude that sufficient evidence supported the conviction.

[19] Affirmed.

Tavitas, C.J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

Talisha R. Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

Joel M. Schumm
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana